**GOLDBERG & OSBORNE**
**33 North Stone, Suite 900**
**Tucson, Arizona 85701**
**(520) 620-3975**

**David J. Diamond, Esq.**
**Ddiamond@goldbergandosborne.com**

**D. Greg Sakall, Esq.**
**gsakall@goldbergandosborne.com**
**Attorneys for Plaintiffs**

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LEAMON LYONS and JUDY LYONS, husband and wife,<br><br>Plaintiffs,<br><br>vs.<br><br>AUXILIUM PHARMACEUTICALS, INC.,<br><br>Defendant. | MDL No. 2545<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

### <u>COMPLAINT</u>

Plaintiffs, Leamon Lyons and Judy Lyons (hereinafter "Plaintiffs"), residing in Dover, Stewart County within the State of Tennessee, by and through their undersigned counsel, hereby sue Defendant Auxilium Pharmaceuticals, Inc. ("Defendant") and allege as follows:

### <u>INTRODUCTION</u>

1.     This case involves the prescription drug Testim, which is manufactured, sold, distributed and promoted by Defendant as a testosterone replacement therapy.

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

2.     Auxilium misrepresented that Testim is a safe and effective treatment for hypogonadism or "low testosterone" when, in fact, this drug causes serious medical problems, including life threatening cardiac events, strokes, and thrombolytic events.

3.     Auxilium engaged in aggressive consumer and physician marketing and advertising campaigns for Testim. Further, Defendant engaged in an aggressive "disease awareness" campaign to alert men that they might be suffering from "Low T."

4.     Consumers of Testim were misled as to the drug's safety and efficacy, and as a result have suffered injuries, including life-threatening cardiac events, strokes, and thrombolytic events.

## PARTIES

5.     Plaintiffs are citizens of Dover, Tennessee.

6.     Defendant, Auxilium Pharmaceuticals, Inc., is a Delaware corporation which has its principal place of business at 640 Lee Road, Chesterbrook, Pennsylvania 19087. Plaintiffs aver that Auxilium conducted business and derived substantial revenue from sales of Testim within the State of Tennessee.

7.     At all times relevant to this Complaint, Auxilium was engaged in the business of designing, licensing, manufacturing, distributing, selling, marketing, and introducing into interstate commerce, either directly or indirectly through third parties or related entities, the prescription testosterone replacement therapy drug sold under the name Testim throughout the United States, including the State of Tennessee.

## JURISDICTION AND VENUE

8.     The jurisdiction of this Court over the subject matter of this action is predicated on 28 U.S.C. Section §1332. The amount in controversy exceeds $75,000.00, exclusive of interest and costs.

9.     Venue of this case is appropriate in the United States District Court for the Northern District of Illinois, pursuant to Judge Matthew F. Kennelly's Order, which permits

**GOLDBERG & OSBORNE**
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

directly filing into the United States District Court for the Northern District of Illinois, under Case MDL No. 2545, *In re: Testosterone Replacement Therapy Products Liability Litigation.*

## GENERAL ALLEGATIONS

10.     This action is for damages brought on behalf of Plaintiff, Leamon Lyons, who was prescribed and supplied with, received and who has taken and applied the prescription drug Testim, as tested, studied, researched, evaluated, endorsed, designed, formulated, compounded, manufactured, produced, processed, assembled, inspected, distributed, marketed, labeled, promoted, packaged, advertised for sale, prescribed, sold or otherwise placed in the stream of interstate commerce by Defendant. This action seeks, among other relief, general and special damages and equitable relief in order to enable the Plaintiff, Leamon Lyons, to treat and monitor the dangerous, severe, and life-threatening side effects caused by this drug.

11.     Defendant's wrongful acts, omissions, and fraudulent misrepresentations caused Plaintiff's injuries and damages.

12.     At all times herein mentioned, the Defendant was engaged in the business of, or were successors in interest to, entities engaged in the business of research, licensing, designing, formulating, compounding, testing, manufacturing, producing, processing, assembling, inspecting, distributing, marketing, labeling, promoting, packaging and/or advertising for sale or selling the prescription drug Testim for the use and application by the consuming public.

13.     At all times herein mentioned, Defendant was authorized to do business within Plaintiffs' state of residence.

14.     At all times herein mentioned, the officers and directors of Defendant participated in, authorized, and directed the production and promotion of the aforementioned product when they knew, or with the exercise of reasonable care should have known, of the hazards and dangerous propensities of said product and thereby actively participated in the tortious conduct which resulted in the injuries suffered by Plaintiff Leamon Lyons herein.

3

15. Plaintiffs file this lawsuit within the applicable limitations period of first suspecting that said drugs caused the appreciable harm sustained by Plaintiff Leamon Lyons. Plaintiffs could not, by the exercise of reasonable diligence, have discovered Plaintiff's injuries or losses at an earlier time because the injuries or losses were caused without perceptible trauma or harm, and when the Plaintiffs' injuries or losses were discovered their cause was unknown to Plaintiffs. Plaintiffs did not suspect, nor did Plaintiffs have reason to suspect, that Plaintiff Leamon Lyons had been injured, the cause of the injuries, or the tortious nature of the conduct causing the injuries, until less than the applicable limitations period prior to the filing of this action. Additionally, Plaintiffs were prevented from discovering this information sooner because Defendant herein misrepresented and continue to misrepresent to the public and to the medical profession that the drug Testim is safe and free from serious side effects, and Defendant has fraudulently concealed facts and information that could have led Plaintiffs to discover a potential cause of action.

## OVERVIEW

16. Hypogonadism is a specific condition of the sex glands, which in men may involve the diminished production or nonproduction of testosterone.

17. Auxilium coordinated massive advertising campaigns designed to convince men that they suffered from low testosterone. Auxilium orchestrated national disease awareness media blitzes that purported to educate male consumers about the signs of low testosterone. The marketing campaigns included online media and promotional literature placed in healthcare providers' offices and distributed to potential testosterone users.

18. Defendant coordinated a massive advertising campaign designed to convince men that they suffered from low testosterone. Defendant orchestrated a national disease awareness media blitz that purported to educate male consumers about the signs of low testosterone. The marketing campaign consisted of television advertisements, promotional literature placed in healthcare providers' offices and distributed to potential Testim users.

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

19.     The television advertisements suggest that various symptoms often associated with other conditions may be caused by low testosterone and encourage men to discuss testosterone replacement therapy with their doctors if they experienced any of the "symptoms" of low testosterone. These "symptoms" include listlessness, increased body fat, and moodiness—all general symptoms that are often a result of aging, weight gain, or lifestyle, rather than low testosterone.

20.     Auxilium also sought to convince primary care physicians that low testosterone levels are widely under-diagnosed and that conditions associated with normal aging could be caused by low testosterone levels.

21.     While running their disease awareness campaign, Defendant promoted their product Testim as an easy to use topical testosterone replacement therapy. Defendant contrasted their product's at-home topical application with less convenient prescription testosterone injections, which require frequent doctor visits.

22.     Auxilium convinced millions of men to discuss testosterone replacement therapy with their doctors, and consumers and their physicians relied on Defendant's promises of safety and ease. Although prescription testosterone replacement therapy had been available for years, millions of men who had never been prescribed testosterone flocked to their doctors and pharmacies.

23.     What consumers received, however, were not safe drugs, but a product which causes life-threatening problems, including strokes and heart attacks.

24.     Auxilium's marketing program sought to create the image and belief by consumers and physicians that low testosterone affected a large number of men in the United States and that the use of testosterone is safe for humans, even though Auxilium knew these to be false, and even though Auxilium had no reasonable grounds to believe them to be true.

25.     There have been a number of studies indicating that testosterone in men increases the risk of heart attacks and strokes.

5

26. In 2010, a New England Journal of Medicine Study entitled "Adverse Events Associated with Testosterone Administration" was discontinued after an exceedingly high number of men in the testosterone group suffered adverse events.

27. In November of 2013, a JAMA study was released entitled "Association of Testosterone Therapy with Mortality, Myocardial Infarction, and Stroke in Men with Low Testosterone Levels" which indicated that testosterone therapy raised the risk of death, heart attack and stroke by about 30%.

28. On January 29, 2014, a study was released in PLOS ONE entitled "Increased Risk of Non-Fatal Myocardial Infarction Following Testosterone Therapy Prescription in Men" which indicated that testosterone use doubled the risk of heart attacks in men over sixty five years old and men younger than sixty-five with a previous diagnosis of heart disease.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

29. The Food and Drug Administration approved Testim on October 31, 2002, for the treatment of adult males who have low or no testosterone. After FDA approval, Testim was widely advertised and marketed by Defendant as a safe and effective testosterone replacement therapy.

30. Testim is a hydroalcoholic gel containing testosterone, applied to the shoulders and upper arms and enters the body through transdermal absorption.

31. Testosterone is a primary androgenic hormone responsible for normal growth, development of the male sex organs, and maintenance of secondary sex characteristics.

32. The hormone plays a role in sperm production, fat distribution, maintenance of muscle strength and mass, and sex drive.

33. In men, testosterone levels normally begin a gradual decline after the age of thirty.

34. The average testosterone levels for most men range from 300 to 1,000 nanograms per deciliter of blood. However, testosterone levels can fluctuate greatly depending on many

6

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

factors, including sleep, time of day, and medication. Resultantly, many men who fall into the hypogonadal range one day will have normal testosterone levels the next.

35. Testim produces undesirable side effects to patients who use the drug, including but not limited to, myocardial infarction, stroke, and death.

36. In some patient populations, Testim use may increase the incidence of myocardial infarctions and death by over 500%.

37. In addition to the above, Testim has been linked to several severe and life changing medical disorders in both users and those who come into physical contact with users or the unwashed clothes of someone who applied Testim. Patients taking Testim may experience enlarged prostates and increased serum prostate-specific antigen levels.

38. Defendant's marketing strategy beginning in 2000 has been to aggressively market and sell their products by misleading potential users about the prevalence and symptoms of low testosterone and by failing to protect users from serious dangers that Defendant knew or should have known to result from use of its products.

39. Defendant successfully marketed Testim by undertaking a "disease awareness" marketing campaign. This campaign sought to create a consumer perception that low testosterone is prevalent among U.S. men and that symptoms previously associated with other physical and mental conditions, such as aging, stress, depression, and lethargy were actually attributable to "Low-T."

40. Defendant's advertising program sought to create the image and belief by consumers and their physicians that the use of Testim was a safe method of alleviating their symptoms, had few side effects and would not interfere with their daily lives, even though Defendant knew or should have known these to be false, and even though the Defendant had no reasonable grounds to believe them to be true.

41. Defendant purposefully downplayed, understated and outright ignored the health hazards and risks associated with using Testim. Defendant deceived potential Testim users by

relaying positive information through the press, including testimonials from retired professional athletes, and manipulating hypogonadism statistics to suggest widespread disease prevalence, while downplaying known adverse and serious health effects.

42. Defendant concealed material relevant information from potential Testim users and minimized user and prescriber concern regarding the safety of Testim.

43. In particular, in the warnings Defendant gives in their commercials, online and print advertisements, Defendant fails to mention any potential cardiac or stroke side effects and falsely represents that they adequately tested Testim for all likely side effects.

44. As a result of Defendant's advertising and marketing, and representations about its product, men in the United States pervasively seek out prescriptions for Testim. If Plaintiff in this action had known the risks and dangers associated with Testim, he would not have taken Testim and consequently would not have been subject to its serious side effects.

## SPECIFIC FACTUAL ALLEGATIONS

45. Plaintiff Leamon Lyons was prescribed and used Testim from approximately 2011 to 2013.

46. Plaintiff viewed Defendant's advertising for Testim and decided to use the product after viewing those advertisements.

47. Plaintiff Leamon Lyons' consumption of Testim caused physical and emotional impairment which affected his personal and professional life.

48. As a result of his use of Testim, Plaintiff Leamon Lyons suffered physical and emotional injuries including, but not limited to, stroke, which necessitated substantial treatment.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY – FAILURE TO WARN

49. Plaintiffs incorporate by reference herein each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

8

50. Testim was defective and unreasonably dangerous when it left the possession of Defendant in that it contained warnings insufficient to alert consumers, including Plaintiff, Leamon Lyons, of the dangerous risks and reactions associated with the subject product, including, but not limited to, its propensity to cause permanent physical injuries including, but not limited to, developing cardiovascular disease, strokes, myocardial infarcts, and other serious injuries, side effects, and even death; notwithstanding Defendant's knowledge of an increased risk of these injuries and side effects over other forms of treatment for low testosterone. Thus, Testim was unreasonably dangerous because an adequate warning was not provided.

51. Testim was manufactured and supplied by Defendant and was defective due to inadequate post-marketing warnings or instructions because, after Defendant knew or should have known of the risk of serious bodily harm from the use of Testim, Defendant failed to provide an adequate warning to consumers and/or their health care providers of the defects of the product, and/or alternatively failed to conform to federal and/or state requirements for labeling, warnings and instructions, or recall, while knowing that the product could cause serious injury and/or death.

52. Plaintiff Leamon Lyons was prescribed and used Testim for its intended purpose.

53. Plaintiff Leamon Lyons could not have discovered any defect in the subject product through the exercise of reasonable care.

54. Defendant, as manufacturer and/or distributor of Testim, is held to the level of knowledge of an expert in the field.

55. The warnings that were given by Defendant were not accurate, clear, and/or were ambiguous.

56. The warnings that were given by Defendant failed to properly warn physicians of the increased risks of permanent physical injuries including, but not limited to, heart attack, stroke, thromboembolic events and death.

9

57.    Plaintiff, Leamon Lyons, individually and through his prescribing physician, reasonably relied upon the skill, superior knowledge, and judgment of Defendant.

58.    Defendant had a continuing duty to warn Plaintiff Leamon Lyons of the dangers associated with Testim. Had Plaintiff Leamon Lyons received adequate warnings regarding the risks of Testim, he would not have used it.

59.    As a direct and proximate result of Plaintiff Leamon Lyons' reasonably anticipated use of Testim as manufactured, designed, sold, supplied, marketed and/or introduced into the stream of commerce by Defendant, Plaintiff suffered serious injury, harm, damages, economic and non-economic loss and will continue to suffer such harm, damages and losses in the future.

**SECOND CAUSE OF ACTION**
**STRICT LIABILITY – DESIGN DEFECT**

60.    Plaintiffs repeat, reiterate and re-allege each and every allegation of this Complaint contained in the paragraphs above, with the same force and effect as if stated herein.

61.    Testim is defective in its design or formulation in that it is not reasonably fit, suitable, or safe for its intended purpose and/or that the foreseeable risks exceed the benefits associated with its design and formulation.

62.    At all times material to this action, Testim was expected to reach, and did reach, consumers in the State of Tennessee and throughout the United States, including Plaintiff Leamon Lyons, without substantial change in the condition in which it was sold.

63.    At all times material to this action, Testim was designed, developed, manufactured, tested, packaged, promoted, marketed, distributed, labeled, and/or sold by the Defendant in a defective and unreasonably dangerous condition at the time it was placed in the stream of commerce in ways which include, but are not limited to, one or more of the following particulars:

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

10

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

a.      When placed in the stream of commerce, Testim contained unreasonably dangerous design defects and was not reasonably safe for its intended use, subjecting Leamon Lyons to risks that exceeded the benefits of the subject product including, but not limited to, permanent personal injuries including, but not limited to, developing cardiovascular disease, strokes, myocardial infarctions, and other serious injuries and side effects;

b.      When placed in the stream of commerce, Testim was defective in design and formulation, making the use of Testim more dangerous than an ordinary consumer would expect, and more dangerous than other risks associated with the other medications and similar drugs on the market to treat low testosterone;

c.      The design defects found in Testim existed before it left the control of the Defendant;

d.      Testim was insufficiently and inadequately tested;

e.      Testim caused harmful side effects in Plaintiff Leamon Lyons and the public as a whole that outweighed any potential utility; and

f.      Testim was not accompanied by adequate instructions and/or warnings to fully apprise consumers, including Plaintiff Leamon Lyons, of the full nature and extent of the risks and side effects associated with its use, thereby rendering Defendant liable to Plaintiffs.

64.      In addition, at the time Testim left the control of Defendant, there were practical and feasible alternative designs that would have prevented and/or significantly reduced the risk of Plaintiff Leamon Lyons' injuries without impairing the reasonably anticipated or intended function of the product. These safer alternative designs were economically and technologically feasible and would have prevented or significantly reduced the risk of Plaintiff Leamon Lyons' injuries without substantially impairing the products' utility.

11

**GOLDBERG & OSBORNE**
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

### THIRD CAUSE OF ACTION
### NEGLIGENCE

65.    Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though set forth herein.

66.    At all times herein mentioned, Defendant had a duty to properly manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, distribute, prepare for use, sell, prescribe and adequately warn of the risks and dangers of Testim.

67.    At all times herein mentioned, Defendant negligently and carelessly manufactured, designed, formulated, distributed, compounded, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold Testim and failed to adequately test and warn of the risks and dangers of Testim.

68.    Despite the fact that Defendant knew or should have known that Testim caused unreasonable, dangerous side effects, Defendant continued to market Testim to consumers including Plaintiff, Leamon Lyons, when there were safer alternative methods of treating loss of energy, libido erectile dysfunction, depression, loss of muscle mass and other conditions Testim's advertising claims are caused by low testosterone.

69.    Defendant knew or should have known that consumers such as Plaintiff Leamon Lyons would foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care as described above.

70.    Defendant's negligence was a proximate cause of Plaintiff Leamon Lyons' injuries, harm and economic loss, which Plaintiffs suffered, and will continue to suffer, as described and prayed for herein.

### FOURTH CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

71.    Plaintiffs incorporate by reference here each of the allegations heretofore set forth in this Complaint as though fully set forth herein.

12

72.     Prior to the time that the aforementioned product was used by Plaintiff, Leamon Lyons, Defendant impliedly warranted to Plaintiff and Plaintiff's agents and physicians that Testim was of merchantable quality and safe and fit for the use for which it was intended.

73.     Plaintiffs were and are unskilled in the research, design and manufacture of the products and reasonably relied entirely on the skill, judgment and implied warranty of the Defendant in using Testim.

74.     Testim was neither safe for its intended use nor of merchantable quality, as warranted by Defendant, in that Testim has dangerous propensities when used as intended and will cause severe injuries to users.

75.     As a result of the abovementioned breach of implied warranties by Defendant, Plaintiff Leamon Lyons suffered injuries and damages as alleged herein.

**FIFTH CAUSE OF ACTION**
**BREACH OF EXPRESS WARRANTY**

76.     Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint as though fully set forth here.

77.     At all times mentioned, Defendant expressly represented and warranted to Plaintiff and Plaintiff's agents and physicians, by and through statements made by Defendant to their authorized agents or sales representatives, orally and in publications, package inserts and other written materials intended for physicians, medical patients and the general public, that Testim is safe, effective, fit and proper for its intended use. Plaintiff purchased Testim relying upon these warranties.

78.     In utilizing Testim, Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of Defendant. These warranties and representations were false in that Testim is unsafe and unfit for its intended uses.

79.     As a result of the abovementioned breach of express warranties by Defendant, Plaintiff Leamon Lyons suffered injuries and damages as alleged herein.

13

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

**SIXTH CAUSE OF ACTION**
**FRAUD**

80.     Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint as though set forth fully herein.

81.     Defendant, from the time they first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed Testim, and up to the present, willfully deceived Plaintiff by concealing from him, Plaintiff's physicians and the general public, the true facts concerning Testim, which the Defendant had a duty to disclose.

82.     At all times herein mentioned, Defendant conducted a sales and marketing campaign to promote the sale of Testim and willfully deceive Plaintiff, Plaintiff's physicians and the general public as to the benefits, health risks and consequences of using Testim. Defendant knew of the foregoing, that Testim is not safe, fit and effective for human consumption, that using Testim is hazardous to health, and that Testim has a serious propensity to cause serious injuries to its users, including but not limited to the injuries Plaintiff Leamon Lyons suffered.

83.     Defendant concealed and suppressed the true facts concerning Testim with the intent to defraud Plaintiffs, in that Defendant knew that Plaintiff Leamon Lyons' physicians would not prescribe Testim, and Plaintiff Leamon Lyons would not have used Testim, if they were aware of the true facts concerning its dangers and its lack of efficacy.

84.     As a result of Defendant's fraudulent and deceitful conduct, Plaintiff Leamon Lyons suffered injuries and damages as alleged herein.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENT MISREPRESENTATION**

85.     Plaintiffs incorporate by reference herein each of the allegations set forth in this Complaint as though fully set forth herein.

86.     From the time Testim was first tested, studied, researched, evaluated, endorsed, manufactured, marketed and distributed, and up to the present, Defendant made

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

misrepresentations to Plaintiff Leamon Lyons, his physicians and the general public, including, but not limited to, the misrepresentation that Testim was safe, fit and effective for human consumption. At all times mentioned, Defendant conducted a sales and marketing campaign to promote the sale of Testim and willfully deceived Plaintiff Leamon Lyons, his physicians and the general public as to the health risks and consequences of the use of the abovementioned product.

87.    The Defendant made the foregoing representations without any reasonable ground for believing them to be true. These representations were made directly by Defendant, by sales representatives and other authorized agents of Defendant, and in publications and other written materials directed to physicians, medical patients and the public, with the intention of inducing reliance and the prescription, purchase and use of the subject product.

88.    The representations by the Defendant was in fact false, in that Testim is not safe, fit and effective for human consumption. Instead, using Testim is hazardous to health, and Testim has a serious propensity to cause serious injuries to users, including but not limited to the injuries suffered by Plaintiff Leamon Lyons.

89.    The foregoing representations by Defendant, and each of them, were made with the intention of inducing reliance and the prescription, purchase and use of Testim.

90.    In reliance on the misrepresentations made by the Defendant, and each of them, Plaintiff Leamon Lyons was induced to purchase and use Testim. If Plaintiff Leamon Lyons had known of the true facts and the facts concealed by the Defendant, he would not have used Testim. His reliance upon Defendant's misrepresentations was justified because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

91.    As a result of the foregoing negligent misrepresentations by Defendant, Plaintiff Leamon Lyons suffered injuries and damages as alleged herein.

15

**EIGHTH CAUSE OF ACTION**
**NEGLIGENCE PER SE—VIOLATION OF 21 U.S.C. §§ 331(a) & 352**

92.     As part of their duty to exercise reasonable care, Defendant was obligated to follow public laws and regulations enacted to protect the safety of persons such as Plaintiff, Leamon Lyons, including 21 U.S.C. § 331(a), § 352, and other statutes and regulations, which make it unlawful to sell misbranded prescription drug products.

93.     The labeling for Testim failed to conform to the requirements of 21 U.S.C. § 352, including subsections (a), (c), and (j), and the requirements of 21 C.F.R. § 201.100(c)(1), and, therefore, violated 21 U.S.C. § 331(a), which prohibits the sale of misbranded drugs.

94.     The label and package insert for Testim is misbranded within the meaning of 21 U.S.C. § 352(a) and (f) because it was false and misleading and failed to give adequate warnings and directions for use by physicians who prescribe Testim.

95.     Testim is misbranded pursuant to 21 U.S.C. § 352 because:

(a)     Words, statements, or other information required under that section are not prominently placed with such conspicuousness and in such ways as to render it likely to be read and understood by the ordinary individual or prescriber under customary conditions of purchase and use.

(b)     The labeling does not bear adequate directions for use, and the labeling does not bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage, methods, or application in such manner and form as are necessary for the protection of patients.

(c)     It is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling.

96.     Because Defendant had a statutory duty under 21 U.S.C. § 352 (a) and (f) not to misbrand Testim, and because they violated this duty, they are guilty of negligence per se.

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

97.    Testim is misbranded pursuant to 21 C.F.R. § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

98.    Defendant violated 21 C.F.R. § 201.57 because:

(a)    As shown, the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug (i.e., heart attacks, strokes, and other blood clotting injuries).

(b)    They failed to identify specific tests needed for selection or monitoring of patients who took the prescription drug Testim. The safety considerations regarding Testim are such that the drug should be reserved for certain situations, and the Defendant failed to state such information.

(d)    The labeling fails to describe serious adverse reactions and potential safety hazards, and steps that should be taken if they occur.

(e)    The labeling does not state an upper limit dosing beyond which safety and effectiveness have not been established.

99.    Testim violates 21 C.F.R. § 210.122 because the labeling and packaging materials do not meet the appropriate specifications.

100.    Testim violates 21 C.F.R. § 310.303 in that it is not safe and effective for its intended use.

101.    Defendant violated 21 C.F.R. § 310.305 and § 314.80 by:

(a)    Failing to report adverse events associated with Testim as soon as possible or at least within 15 days of the initial receipt by Defendant of the adverse drug experience.

(b)    Failing to conduct an investigation of each adverse event associated with Testim, evaluate the cause of the adverse event, submit follow-up reports within the prescribed 15 calendar days of receipt of new information or was requested by

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

the FDA, and keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences.

(c)     Failing to provide periodic reports to the FDA containing (1) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (2) an Adverse Reaction Report for each adverse drug experience not already reported under the Post marketing 15-day Alert report, (3) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated) and/or (4) a copy of the published article from scientific or medical journals along with one or more 15-day Alert reports based on information from the scientific literature.

102.    Defendant violated 21 C.F.R. § 312.32 because they failed to review all information relevant to the safety of Testim or otherwise received by Defendant from any sources, including information from any clinical or epidemiological studies, animal studies, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities.

103.    Defendant failed to meet the standard of care set out in these statutes and regulations, which were intended for the benefit of individual consumers such as Plaintiff, Leamon Lyons, making Defendant liable to Plaintiff. Because each of them violated the duties imposed by these statutes and regulations, they are guilty of negligence per se.

104.    As a direct and proximate result of the actions and inactions of Defendant, Plaintiffs suffered damages, including personal injuries, economic damages, and non-economic damages. Defendant's conduct was further wanton, egregious, and reckless so as to warrant the award of punitive damages.

18

GOLDBERG & OSBORNE
698 E. Wetmore Road, Suite #200
Tucson, AZ 85705
(520) 620-3975

### NINTH CAUSE OF ACTION
### LOSS OF CONSORTIUM

105.    Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint as though fully set forth herein.

106.    Plaintiff, Judy Lyons, at all times relevant was the lawful wife of Leamon Lyons.

107.    As a direct, legal, and proximate result of the culpability and fault of Defendant, be such fault through strict liability, negligence or otherwise, Plaintiff Judy Lyons suffered the loss of support, services, love, companionship, affection, society, intimate relations, and other elements of consortium, all to her general damage in an amount in excess of the jurisdictional minimum of this court.

108.    Plaintiffs demand judgment against Defendant for compensatory and punitive damages such as a jury may award, and such other relief as the Court deems just and proper in order to remedy Plaintiff Judy Lyons' loss of consortium.

### TENTH CAUSE OF ACTION
### PUNITIVE DAMAGES ALLEGATIONS

109.    Plaintiffs incorporate by reference here each of the allegations set forth in this Complaint as though fully set forth herein.

110.    The acts, conduct, and omissions of Defendant, as alleged throughout this Complaint were willful and malicious. Defendant committed these acts with a conscious disregard for the rights of Plaintiff Leamon Lyons and other Testim users and for the primary purpose of increasing Defendant's profits from the sale and distribution of Testim. Defendant's outrageous and unconscionable conduct warrants an award of exemplary and punitive damages against Defendant in an amount appropriate to punish and make an example of Defendant.

111.    Prior to the manufacturing, sale, and distribution of Testim, Defendant knew that said medication was in a defective condition as previously described herein and knew that those who were prescribed the medication would experience and did experience severe physical, mental, and emotional injuries. Further, Defendant, through their officers, directors, managers,

and agents, knew that the medication presented a substantial and unreasonable risk of harm to the public, including Plaintiff Leamon Lyons and as such, Defendant unreasonably subjected consumers of said drugs to risk of injury or death from using Testim.

112. Despite its knowledge, Defendant, acting through its officers, directors and managing agents for the purpose of enhancing Defendant's profits, knowingly and deliberately failed to remedy the known defects in Testim and failed to warn the public, including Plaintiffs, of the extreme risk of injury occasioned by said defects inherent in Testim. Defendant and their agents, officers, and directors intentionally proceeded with the manufacturing, sale, and distribution and marketing of Testim knowing these actions would expose persons to serious danger in order to advance Defendant's pecuniary interest and monetary profits.

113. Defendant's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people, and was carried on by Defendant with willful and conscious disregard for the safety of Plaintiff, Leamon Lyons, entitling Plaintiff to exemplary damages.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against the Defendant as follows, as appropriate to each cause of action alleged and as appropriate to the particular standing of Plaintiffs:

A. General damages in an amount that will conform to proof at time of trial;

B. Special damages in an amount within the jurisdiction of this Court and according to proof at the time of trial;

C. Medical expenses, past and future, according to proof at the time of trial;

D. For past and future mental and emotional distress, according to proof;

E. Damages for loss of care, comfort, society, and companionship in an amount within the jurisdiction of this Court and according to proof;

F. For punitive or exemplary damages according to proof;

G.  Restitution, disgorgement of profits, and other equitable relief;

H.  Injunctive relief;

I.  Attorney's fees;

J.  For costs of suit incurred herein;

K.  For pre-judgment interest as provided by law;

L.  For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all counts and as to all issues.

Respectfully submitted this 27th day of October, 2014.

GOLDBERG & OSBORNE

/s/ David J. Diamond
David J. Diamond
D. Greg Sakall
Attorneys for Plaintiffs

I hereby certify that on the 27th day of October, 2014, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.

/s/ K. Hampton

21